(Slip Opinion)          OCTOBER  TERM,  2008                    1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KNOWLES, WARDEN *v.* MIRZAYANCE

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 07–1315.   Argued January 13, 2009—Decided March 24, 2009

Respondent Mirzayance entered pleas of not guilty and not guilty by reason of insanity (NGI) at his state-court murder trial.  During the guilt phase, he sought to avoid a conviction for first-degree murder and instead obtain a second-degree murder verdict by presenting medical testimony that he was insane at the time of the crime and was, therefore, incapable of the necessary premeditation or deliberation.  The jury nevertheless convicted him of first-degree murder.  After the trial's NGI phase was scheduled, Mirzayance accepted his counsel's recommendation to abandon the insanity plea.  Counsel believed that a defense verdict was unlikely because the jury had just rejected medical testimony similar to that which would be presented to establish the NGI defense.  Moreover, although counsel had planned to supplement the medical evidence with testimony by Mirzayance's parents as to their son's mental illness, the parents refused to testify at the last moment.  Following his conviction, Mirzayance alleged in state postconviction proceedings that his attorney's recommendation to withdraw the NGI plea constituted ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U. S. 668.  The trial court denied relief, and the California Court of Appeal affirmed.

Mirzayance then applied for federal habeas relief, which the District Court denied.  The Ninth Circuit reversed, ordering an evidentiary hearing on counsel's recommendation to withdraw the NGI plea.  During the hearing, the Magistrate Judge made extensive fact-findings, including, *inter alia,* that the NGI phase medical evidence essentially would have duplicated the evidence the jury rejected in the guilt phase; that counsel doubted the likelihood of prevailing on the NGI claim because the jury's finding of first-degree murder as a practical matter would cripple Mirzayance's chances of convincing

the jury that he nevertheless was incapable of understanding the na-
ture and quality of his act and of distinguishing right from wrong;
that Mirzayance's parents were not simply reluctant, but had effec-
tively refused, to testify; that counsel had made a carefully reasoned
decision not to proceed with the NGI plea after weighing his options
and discussing the matter with experienced co-counsel; but that
counsel's performance was nevertheless deficient because Mirzayance
had "nothing to lose" by going forward with the NGI phase of the
trial. The Magistrate Judge also found prejudice and recommended
habeas relief. The District Court accepted the recommendation and
granted the writ. The Court of Appeals affirmed, ruling, among other
things, that counsel's performance had been deficient because Mir-
zayance's parents had not refused, but had merely expressed reluc-
tance to testify, and because competent counsel would have at-
tempted to persuade them to testify, which Mirzayance's counsel
admittedly did not. The court essentially concluded that competent
counsel would have pursued the insanity defense because counsel
had nothing to lose by putting on the only defense available. In addi-
tion, the court found prejudice because, in the court's view, there was
a reasonable probability the jury would have found Mirzayance in-
sane had counsel pursued the NGI phase. The Ninth Circuit con-
cluded that federal habeas relief was authorized under 28 U. S. C.
§2254(d)(1) because the California Court of Appeal had "unreason-
abl[y] appli[ed] clearly established Federal law."

*Held:* Whether the state-court decision is reviewed under §2254(d)(1)'s
standard or *de novo*, Mirzayance has failed to establish that his coun-
sel's performance was ineffective. Pp. 8–16.

　(a) The State Court of Appeal's denial of Mirzayance's ineffective-
assistance claim did not violate clearly established federal law. The
Ninth Circuit reached a contrary result based largely on its applica-
tion of an improper review standard—it blamed counsel for abandon-
ing the NGI claim because there was "nothing to lose" by pursuing it.
But it is not "an unreasonable application of clearly established Fed-
eral law" for a state court to decline to apply a specific legal rule that
has not been squarely established by this Court. See, *e.g., Wright* v.
*Van Patten*, 552 U. S. ___, ___. Absent anything akin to the "nothing
to lose" standard in this Court's precedent, habeas relief could have
been granted under §2254(d)(1) only if the state-court decision in this
case had unreasonably applied *Strickland*'s more general standard
for ineffective-assistance claims, whereby a defendant must show
both deficient performance by counsel and prejudice, 466 U. S., at
687. The question "is not whether a federal court believes the state
court's determination" under *Strickland* "was incorrect but whether
[it] was unreasonable—a substantially higher threshold." *Schriro* v.

Syllabus

*Landrigan*, 550 U. S. 465, 473. And, because *Strickland*'s is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the §2254(d)(1) standard, Mirzayance's ineffective-assistance claim fails. It was not unreasonable for the state court to conclude that counsel's performance was not deficient when he counseled Mirzayance to abandon a claim that stood almost no chance of success. Pp. 8–11.

(b) Even if Mirzayance's ineffective-assistance claim were eligible for *de novo* review, it would still fail because he has not shown ineffective assistance at all. Mirzayance can establish neither the deficient performance nor the prejudice required by *Strickland.* As to performance, he has not shown "that counsel's representation fell below an objective standard of reasonableness." 466 U. S., at 687–688. Rather, counsel merely recommended the withdrawal of what he reasonably believed was a claim doomed because similar medical testimony had already been rejected and the parents' testimony, which he believed to be his strongest evidence, would not be available. The Ninth Circuit's position that competent counsel might have persuaded the reluctant parents to testify is in tension with the Magistrate Judge's contrary findings and applies a more demanding standard than *Strickland* prescribes. The failure to show ineffective assistance is also confirmed by the Magistrate Judge's finding that counsel's decision was essentially an informed one "made after thorough investigation of law and facts relevant to plausible options," and was therefore "virtually unchallengeable." *Id.,* at 690. The Ninth Circuit's insistence that counsel was required to assert the only defense available, even one almost certain to lose, is not supported by any "prevailing professional norms" of which the Court is aware. See *id.,* at 688. Nor has Mirzayance demonstrated that he suffered prejudice, which requires a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See *id.*, at 694. In fact, it was highly improbable that the jury, having just rejected testimony about Mirzayance's mental condition in the guilt phase, would have reached a different result based on similar evidence at the NGI phase. Pp. 11–16.

Reversed and remanded.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, BREYER, and ALITO, JJ., joined, and in which SCALIA, SOUTER, and GINSBURG, JJ., joined as to all but Part II.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–1315

## MICHAEL A. KNOWLES, WARDEN, PETITIONER *v.* ALEXANDRE MIRZAYANCE

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 24, 2009]

JUSTICE THOMAS delivered the opinion of the Court.*

A federal court may grant a habeas corpus application arising from a state-court adjudication on the merits if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). In this case, respondent Alexandre Mirzayance claimed ineffective assistance of counsel because his attorney recommended withdrawing his insanity defense. The California courts rejected this claim on state postconviction review. We must decide whether this decision was contrary to or an unreasonable application of clearly established federal law. We hold that it was not. Whether reviewed under the standard of review set forth in §2254(d)(1) or *de novo*, Mirzayance failed to establish that his counsel's performance was ineffective, see *Strickland* v. *Washington*, 466 U. S. 668 (1984).

———————

*JUSTICE SCALIA, JUSTICE SOUTER, and JUSTICE GINSBURG join all but Part II of this opinion.

I

Mirzayance confessed that he stabbed his 19-year-old cousin nine times with a hunting knife and then shot her four times. At trial, he entered pleas of not guilty and not guilty by reason of insanity (NGI). Under California law, when both of these pleas are entered, the court must hold a bifurcated trial, with guilt determined during the first phase and the viability of the defendant's NGI plea during the second. Cal. Penal Code Ann. §1026(a) (West 1985). During the guilt phase of Mirzayance's trial, he sought to avoid a conviction for first-degree murder by obtaining a verdict on the lesser included offense of second-degree murder. To that end, he presented medical testimony that he was insane at the time of the crime and was, therefore, incapable of the premeditation or deliberation necessary for a first-degree murder conviction. The jury nevertheless convicted Mirzayance of first-degree murder.

The trial judge set the NGI phase to begin the day after the conviction was entered but, on the advice of counsel, Mirzayance abandoned his NGI plea before it commenced. He would have borne the burden of proving his insanity during the NGI phase to the same jury that had just convicted him of first-degree murder. Counsel had planned to meet that burden by presenting medical testimony similar to that presented in the guilt phase, including evidence that Mirzayance was insane and incapable of premeditating or deliberating. Because the jury rejected similar evidence at the guilt phase (where the State bore the burden of proof), counsel believed a defense verdict at the NGI phase (where the burden was on the defendant) was unlikely. He planned, though, to have Mirzayance's parents testify and thus provide an emotional account of Mirzayance's struggles with mental illness to supplement the medical evidence of insanity. But on the morning that the NGI phase was set to begin, Mirzayance's parents refused to testify. After consulting with co-counsel, coun-

sel advised Mirzayance that he should withdraw the NGI plea. Mirzayance accepted the advice.

After he was sentenced, Mirzayance challenged his conviction in state postconviction proceedings. Among other allegations, he claimed that counsel's recommendation to withdraw the NGI plea constituted ineffective assistance of counsel under *Strickland*. The California trial court denied the petition and the California Court of Appeal affirmed without offering any reason for its rejection of this particular ineffective assistance claim. *People* v. *Mirzayance*, Nos. B116856, B124764 (Mar. 31, 1999), App. to Pet. for Cert. 165–167, 200–201 (hereinafter App.). Mirzayance then filed an application for federal habeas relief under 28 U. S. C. §2254, which the District Court denied without an evidentiary hearing. The Court of Appeals reversed the District Court and ordered an evidentiary hearing on counsel's recommendation to withdraw the NGI plea. *Mirzayance* v. *Hickman*, 66 Fed. Appx. 676, 679–681 (CA9 2003). During that evidentiary hearing, a Magistrate Judge made factual findings that the District Court later adopted. Post-Remand Report and Recommendation of United States Magistrate Judge in No. CV 00–01388 DT (RZ) (CD Cal.), App. 38, 68; *Mirzayance* v. *Knowles*, No. CV 00–1388 DT (RZ) (CD Cal., Nov. 15, 2004), *id.*, at 35–36.

According to the Magistrate Judge, counsel's strategy for the two-part trial was to seek a second-degree murder verdict in the first stage and to seek an NGI verdict in the second stage. This strategy faltered when the jury instead convicted Mirzayance of first-degree murder. In the circumstances of this case, the medical evidence that Mirzayance planned to adduce at the NGI phase essentially would have duplicated evidence that the jury had necessarily rejected in the guilt phase. First-degree murder in California includes any killing that is "willful, deliberate, and premeditated." Cal. Penal Code Ann. §189 (West

1999).  To prove NGI, a defendant must show that he was incapable of knowing or understanding the nature of his act or of distinguishing right from wrong at the time of the offense.  See *People* v. *Lawley*, 27 Cal. 4th 102, 170, 38 P. 3d 461, 508 (2002).  Highlighting this potential contradiction, the trial judge instructed the jury during the guilt phase that "[t]he word 'deliberate,'" as required for a first-degree murder conviction, "means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action."  App. 48–49.

When the jury found Mirzayance guilty of first-degree murder, counsel doubted the likelihood of prevailing on the NGI claim.  According to the Magistrate Judge:

> "The defense suspected that a jury's finding, beyond a reasonable doubt, that [Mirzayance] had 'deliberated' and 'premeditated' his killing of [the victim] as a practical matter would cripple [Mirzayance's] chances of convincing the jury later, during the sanity phase, that [Mirzayance] nevertheless 'was incapable of knowing or understanding the nature and quality of his . . . act and of distinguishing right from wrong at the time of the commission of the offense,' Cal. Penal Code §25(b), . . . .
>
> .          .          .          .          .          .
>
> "Any remaining chance of securing an NGI verdict . . . now depended (in [counsel's] view) on presenting some 'emotional [im]pact' testimony *by* [Mirzayance's] *parents*, which [counsel] had viewed as key even if the defense *had* secured a second-degree murder verdict at the guilt phase."  *Id.*, at 50–51 (emphasis in original; capitalization omitted).

But, as the Magistrate Judge found, on the morning that the NGI phase was set to begin, Mirzayance's parents effectively refused to testify:

"[T]he parents at least expressed clear *reluctance* to testify, which, in context, conveyed the same sense as a refusal." *Id.*, at 72 (emphasis in original).

Although the parties disputed this point, the parents' later actions supported the Magistrate Judge's finding that the parents' reluctance to testify amounted to refusal:

"Corroborating the Court's finding that [Mirzayance's] parents indicated a strong disinclination to testify at the NGI phase are the facts that (1) they did not testify later at his sentencing hearing, and (2) the reason for their choosing not to do so . . . is that . . . [it] would have been 'too emotional' for them. . . . If weeks after the guilty verdict and the withdrawal of their son's NGI plea, [Mirzayance's] parents' emotions still prevented them from testifying at the sentencing hearing, then surely those emotional obstacles to their testifying *in the NGI phase* would have been at least as potent, and probably more so." *Id.*, at 73 (emphasis in original).

The Magistrate Judge found that counsel made a carefully reasoned decision not to go forward with the NGI plea:

"[Counsel] carefully weighed his options before making his decision final; he did not make it rashly. . . . [Counsel's] strategy at the NGI phase . . . depended entirely on the heartfelt participation of [Mirzayance's] parents as witnesses. . . . Moreover, [counsel] knew that, although he had experts lined up to testify, their testimony had significant weaknesses. . . . [Counsel's] NGI-phase strategy became impossible to attempt once [Mirzayance's] parents . . . expressed . . . their reluctance to [testify] . . . . All [counsel] was left with were four experts, all of whom reached a conclusion—that [Mirzayance] did not pre-

meditate and deliberate his crime—that the same jury about to hear the NGI evidence already had rejected under a beyond-a-reasonable-doubt standard of proof. The experts were subject to other impeachment as well. . . . [Counsel] discussed the situation with his experienced co-counsel . . . who concurred in [counsel's] proposal that he recommend to [Mirzayance] the withdrawal of the NGI plea." *Id.*, at 69–71.

Based on these factual findings, the Magistrate Judge stated that, in his view, counsel's performance was not deficient.

Despite this determination, the Magistrate Judge concluded that the court was bound by the Court of Appeals' remand order to determine only whether "'there were tactical reasons for abandoning the insanity defense.'" *Id.*, at 98 (quoting *Hickman*, 66 Fed. Appx., at 680). Even though the Magistrate Judge thought that counsel was reasonable in recommending that a very weak claim be dropped, the Magistrate Judge understood the remand order to mean that counsel's performance was deficient if withdrawing the NGI plea would achieve no tactical advantage. The Magistrate Judge found that "[Mirzayance] had nothing to lose" by going forward with the NGI phase of the trial, App. 100, and thus held, under the remand order, that counsel's performance was deficient, *ibid.* As to prejudice, the Magistrate Judge concluded the court was similarly bound by the remand order because the Court of Appeals described the NGI defense as remaining "'viable and strong.'" *Id.*, at 98 (quoting *Hickman*, *supra*, at 681). Accordingly, the Magistrate Judge found prejudice and recommended granting the writ of habeas corpus. The District Court accepted this recommendation and granted the writ.

The Court of Appeals affirmed. *Mirzayance* v. *Knowles*, 175 Fed. Appx. 142, 143 (CA9 2006). It first stated that

the lower court had misunderstood its remand order, which it described as requiring an examination of "counsel's reason for abandoning the insanity defense," rather than as mandating that the District Court must find deficient performance if it found counsel had "nothing to lose" by pursuing the insanity defense. *Ibid.;* App. 98–99. Nonetheless, the Court of Appeals affirmed the finding of deficient performance. According to the court, Mirzayance's "parents did not refuse, but merely expressed reluctance to testify." *Knowles,* 175 Fed. Appx., at 144. And because they may have been willing, "[c]ompetent counsel would have attempted to persuade them to testify, which counsel here admits he did not." *Ibid.*[1] The Court of Appeals also "disagree[d] that counsel's decision was carefully weighed and not made rashly." *Ibid.*

Furthermore, even though it had suggested that the District Court unnecessarily evaluated counsel's strategy under a "nothing to lose" standard, the Court of Appeals affirmed the District Court in large part because Mirzayance's "counsel did not make a true tactical choice" based on its view that counsel had nothing to gain by dropping the NGI defense. *Ibid.* The court held that "[r]easonably effective assistance would put on the only defense available, especially in a case such as this where there was significant potential for success." *Id.,* at 145 (internal quotation marks omitted). The Court of Appeals also found prejudice because, in its view, "[i]f counsel had

-------

[1] At best, the Court of Appeals' characterization of counsel's efforts to persuade the parents to testify is misleading. According to the Magistrate Judge, counsel testified that he did attempt to persuade the parents to testify but that their response "'was kind of flat, and I had no influence over them.'" App. 54 (quoting testimony from evidentiary hearing). In his efforts to convince the parents to testify, counsel told them that Mirzayance "had no chance of securing an NGI verdict without the 'emotional quality from nonprofessional witnesses' that Mr. and Mrs. Mirzayance's testimony could provide; and 'that they were abandoning their son.'" *Id.,* at 53–54 (same).

pursued the insanity phase of the trial, there is a reasonable probability . . . that the jury would have found Mirzayance insane." *Ibid.*

We granted the petition for writ of certiorari, vacated the Court of Appeals' opinion, and remanded for further consideration in light of *Carey* v. *Musladin*, 549 U. S. 70 (2006), which held that a state court had not "'unreasonabl[y] appli[ed] clearly established Federal law'" when it declined to apply our precedent concerning state-sponsored courtroom practices to a case involving spectator conduct at trial, *id.*, at 76–77. *Knowles* v. *Mirzayance*, 549 U. S. 1199 (2007). On remand, the Court of Appeals concluded that its decision was unaffected by *Musladin* and again affirmed the District Court's grant of habeas corpus. App. 4. The Court of Appeals reiterated the same analysis on which it had relied prior to this Court's remand, again finding that the California court had unreasonably applied clearly established federal law because defense counsel's failure to pursue the insanity defense constituted deficient performance as it "secured . . . [n]o actual tactical advantage." *Id.*, at 8. We granted certiorari, 554 U. S. ___ (2008).

## II

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U. S. C. §2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[2]   Here, the relevant state-court

---

[2] Before the Court of Appeals, Mirzayance contended that the standard of review set forth in §2254(d)(1) should not apply to his case. See Brief for Appellee in No. 04–57102 (CA9), pp. 28–29, 33. Before this Court, however, Mirzayance contends that the Court of Appeals correctly applied §2254(d) to his claim. See Brief for Respondent 27, 32.

decision is the California Court of Appeal's decision deny-
ing state habeas relief.

We conclude that the state court's decision to deny
Mirzayance's ineffective-assistance-of-counsel claim did
not violate clearly established federal law. The Court of
Appeals reached a contrary result based, in large measure,
on its application of an improper standard of review—it
blamed counsel for abandoning the NGI claim because
there was nothing to lose by pursuing it.[3] But this Court
has held on numerous occasions that it is not "'an unrea-
sonable application of clearly established Federal law'" for
a state court to decline to apply a specific legal rule that

———————

Mirzayance did question whether the California Court of Appeal's
denial of his claim should receive as much deference as the "prototypi-
cal" state-court adjudication "involv[ing] both a reasoned, written
opinion and an adequate development of the factual record in support
of the claims." *Id.*, at 33. Mirzayance thus contends that "the usual
§2254(d) deferential approach must be modified and adapted" in
evaluating his claim. *Id.*, at 34. Nonetheless, because Mirzayance has
not argued that §2254(d) is entirely inapplicable to his claim or that the
state court failed to reach an adjudication on the merits, we initially
evaluate his claim through the deferential lens of §2254(d). See *United
States* v. *International Business Machines Corp.*, 517 U. S. 843, 855,
n. 3 (1996) (finding that party abandoned issue by failing to address it
in the party's brief on the merits); *Posters 'N' Things, Ltd.* v. *United
States*, 511 U. S. 513, 527 (1994) (same).

In addition, we do not decide whether the Court of Appeals was
correct in finding that an evidentiary hearing on Mirzayance's claim
was required. See *Mirzayance* v. *Hickman*, 66 Fed. Appx. 676, 679–681
(CA9 2003). Mirzayance's ineffective-assistance-of-counsel claim fails
even under the facts presented at the evidentiary hearing.

[3] Although the Court of Appeals implicitly disavowed the "nothing to
lose" standard applied by the District Court and Magistrate Judge, see
App. 5; *Mirzayance* v. *Knowles*, 175 Fed. Appx. 142, 143 (CA9 2006), it
nevertheless concluded that "[n]o actual tactical advantage was to be
gained" by counsel's withdrawal of the insanity defense, App. 8;
*Knowles, supra*, at 144. Finding that counsel is deficient by abandon-
ing a defense where there is nothing to gain from that abandonment is
equivalent to finding that counsel is deficient by declining to pursue a
strategy where there is nothing to lose from pursuit of that strategy.

has not been squarely established by this Court. See *Wright* v. *Van Patten*, 552 U. S. ___, ___ (2008) (slip op., at 5–6 *(per curiam)*; *Schriro* v. *Landrigan*, 550 U. S. 465, 478 (2007); *Musladin*, *supra*, at 76–77. This Court has never established anything akin to the Court of Appeals' "nothing to lose" standard for evaluating *Strickland* claims. Indeed, Mirzayance himself acknowledges that a "nothing to lose" rule is "unrecognized by this Court." Brief for Respondent 28. And the Court of Appeals did not cite any Supreme Court decision establishing a "nothing to lose" standard in any of its three opinions in this case. See App. 3–12; *Knowles*, 175 Fed. Appx. 142; *Hickman*, 66 Fed. Appx. 676.

With no Supreme Court precedent establishing a "nothing to lose" standard for ineffective-assistance-of-counsel claims, habeas relief cannot be granted pursuant to §2254(d)(1) based on such a standard. Instead, such relief may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland*, in which this Court held that a defendant must show both deficient performance and prejudice in order to prove that he has received ineffective assistance of counsel, 466 U. S., at 687. Indeed, this Court has repeatedly applied that standard to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point. See, *e.g.*, *Van Patten*, *supra*, at ___ (slip op., at 5) (evaluating claim under *Strickland* where no Supreme Court precedent established that any other standard applied to the "novel factual context" before the Court); *Schriro*, *supra*, at 478 (evaluating claim under general *Strickland* standard where no Supreme Court precedent addressed the particular "situation in which a client interferes with counsel's efforts to present mitigating evidence to a sentencing court").

The question "is not whether a federal court believes the

state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, *supra*, at 473. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough* v. *Alvarado*, 541 U. S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Under the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the §2254(d)(1) standard, see *Yarborough* v. *Gentry*, 540 U. S. 1, 5–6 (2003) *(per curiam)*, Mirzayance's ineffective-assistance claim fails. It was not unreasonable for the state court to conclude that his defense counsel's performance was not deficient when he counseled Mirzayance to abandon a claim that stood almost no chance of success. As explained more fully below, this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success. See also *infra,* at 14–15.

### III

Even if Mirzayance's ineffective-assistance-of-counsel claim were eligible for *de novo* review, it would still fail. *Strickland* requires a defendant to establish deficient performance and prejudice. 466 U. S., at 687. Mirzayance can establish neither.

Mirzayance has not shown "that counsel's representation fell below an objective standard of reasonableness." *Id.*, at 687–688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.*, at 688. "Judicial scrutiny of

counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*, at 689. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*, at 690.

Here, Mirzayance has not shown that his counsel violated these standards. Rather, his counsel merely recommended the withdrawal of what he reasonably believed was a claim doomed to fail. The jury had already rejected medical testimony about Mirzayance's mental state in the guilt phase, during which the State carried its burden of proving guilt beyond a reasonable doubt. The Magistrate Judge explained this point:

> "All [counsel] was left with were four experts, all of whom reached a conclusion—that [Mirzayance] did not premeditate and deliberate his crime—that the same jury about to hear the NGI evidence already had rejected under a beyond-a-reasonable-doubt standard of proof. The experts were subject to other impeachment as well." App. 71.

In fact, the Magistrate Judge found that counsel "convincingly detailed ways in which [the experts] could have been impeached, for overlooking or minimizing facts which showcased [Mirzayance's] clearly goal-directed behavior." *Id.*, at 70.

In the NGI phase, the burden would have switched to Mirzayance to prove insanity by a preponderance of the evidence. Mirzayance's counsel reasonably believed that there was almost no chance that the same jury would have reached a different result when considering similar evidence, especially with Mirzayance bearing the burden of proof. Furthermore, counsel knew he would have had to present this defense without the benefit of the parents'

testimony, which he believed to be his strongest evidence. See *ibid.* ("[Counsel's] strategy at the NGI phase had been to appeal to the jury in one or both of two ways that depended entirely on the heartfelt participation of [Mirzayance's] parents as witnesses"). Counsel reasonably concluded that this defense was almost certain to lose.

The Court of Appeals took the position that the situation was not quite so dire because the parents "merely expressed reluctance to testify." *Id.,* at 7; *Knowles,* 175 Fed. Appx., at 144. It explained that "[c]ompetent counsel would have attempted to persuade them to testify." App. 7; *Knowles*, *supra*, at 144. But that holding is in tension with the Magistrate Judge's findings and applies a more demanding standard than *Strickland* prescribes. The Magistrate Judge noted that the parents "conveyed the same sense as a refusal." App. 72. Indeed, the Magistrate Judge found that the parents "did not testify later at [Mirzayance's] sentencing hearing" because it "would have been 'too emotional' for them." *Id.*, at 73 (quoting testimony from evidentiary hearing). Competence does not require an attorney to browbeat a reluctant witness into testifying, especially when the facts suggest that no amount of persuasion would have succeeded. Counsel's acceptance of the parents' "convey[ance] [of] . . . a refusal," *id.,* at 72, does not rise to the high bar for deficient performance set by *Strickland*.

Mirzayance's failure to show ineffective assistance of counsel is confirmed by the Magistrate Judge's finding that "[counsel] carefully weighed his options before making his decision final; he did not make it rashly." App. 69. The Magistrate Judge explained all of the factors that counsel considered—many of which are discussed above— and noted that counsel "discussed the situation with his experienced co-counsel" before making it. *Id.*, at 71. In making this finding, the Magistrate Judge identified counsel's decision as essentially an informed decision

"made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U. S., at 690. As we stated in *Strickland*, such a decision is "virtually unchallengeable." *Ibid.*

Without even referring to the Magistrate Judge's finding, the Court of Appeals "disagree[d] that counsel's decision was carefully weighed and not made rashly." App. 7; *Knowles*, s*upra*, at 144. In its view, "counsel acted on his subjective feelings of hopelessness without even considering the potential benefit to be gained in persisting with the plea." App. 8; *Knowles*, *supra*, at 144–145. But courts of appeals may not set aside a district court's factual findings unless those findings are clearly erroneous. Fed. Rule Civ. Proc. 52(a); *Anderson* v. *Bessemer City*, 470 U. S. 564, 573–574 (1985). Here, the Court of Appeals failed even to mention the clearly-erroneous standard, let alone apply it, before effectively overturning the lower court's factual findings related to counsel's behavior.

In light of the Magistrate Judge's factual findings, the state court's rejection of Mirzayance's ineffective-assistance-of-counsel claim was consistent with *Strickland*. The Court of Appeals insisted, however, that "'[r]easonably effective assistance' required here that counsel assert the only defense available . . . ." App. 8; see also *Knowles*, *supra*, at 145. But we are aware of no "prevailing professional norms" that prevent counsel from recommending that a plea be withdrawn when it is almost certain to lose. See *Strickland*, *supra*, at 688. And in this case, counsel did not give up "the only defense available." Counsel put on a defense to first-degree murder during the guilt phase. Counsel also defended his client at the sentencing phase.[4] The law does not require counsel to raise

---

[4]Mirzayance has no complaints about the sentencing phase since he received the lowest possible sentence for his first-degree murder conviction. California authorizes three possible sentences for murder: death,

every available nonfrivolous defense. See *Jones* v. *Barnes*, 463 U. S. 745, 751 (1983); cf. *Wiggins* v. *Smith*, 539 U. S. 510, 533 (2003) (explaining, in case involving similar issue of counsel's responsibility to present mitigating evidence at sentencing, that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant . . . [or even to] present mitigating evidence at sentencing in every case"). Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether. Mirzayance has thus failed to demonstrate that his counsel's performance was deficient.

In addition, Mirzayance has not demonstrated that he suffered prejudice from his counsel's performance. See *Strickland*, 466 U. S., at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, at 694. To prevail on his ineffective-assistance claim, Mirzayance must show, therefore, that there is a "reasonable probability" that he would have prevailed on his insanity defense had he pursued it. This Mirzayance cannot do. It was highly improbable that a jury, which had just rejected testimony about Mirzayance's mental condition when the State bore the burden of proof, would have reached a different result

---

life imprisonment without parole, and imprisonment for 25 years to life. Cal. Penal Code Ann. §190(a) (West 1999). Mirzayance was sentenced to 25 years to life plus 4 years for a weapons enhancement.

when Mirzayance presented similar evidence at the NGI phase. See *supra*, at 12–13.

## IV

Mirzayance has not shown that the state court's conclusion that there was no ineffective assistance of counsel "was contrary to, or involved an unreasonable application of, clearly established Federal law" under §2254. In fact, he has not shown ineffective assistance at all. The judgment of the Court of Appeals is reversed, and the case is remanded with instructions to deny the petition.

*It is so ordered.*