# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-70027

GUY LEN ALLEN,

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2015

Lyle W. Cayce
Clerk

Petitioner - Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:10-CV-651

Before DAVIS, SOUTHWICK, and HIGGINSON, Circuit Judges.

PER CURIAM:*

The United States District Court for the Western District of Texas denied petitioner Guy Allen's federal habeas petition and denied his request for a Certificate of Appealability ("COA"). Allen now moves in this court for a COA. The motion is DENIED.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-70027

FACTUAL AND PROCEDURAL BACKGROUND

On the morning of April 3, 2002, nineteen-year-old Janette Johnson placed a 911 call to police stating there was "domestic violence" occurring between her mother, Barbara Hill, and her "mom's friend." Police arrived seven minutes after the call and found Hill dead in the backyard and Johnson dead in the kitchen. Hill had been stabbed or cut forty-six times; Johnson had been stabbed or cut ten times. Allen ostensibly was Hill's boyfriend at the time of the killings. Allen concedes that he "was connected to the commission of the offense by a plethora of evidence, including, among other things, numerous DNA matches." Allen was tried in state court in Travis County, Texas. A jury found him guilty of capital murder.

During the penalty phase of the trial, Allen's younger brother, Steve Allen,[1] testified about Allen's family background. It was extremely impoverished and rife with abuse. Steve testified that he, Allen, and their six siblings, lived with their mother in a one-room house. The family often had no electricity or gas, food was scarce, and the children slept on the floor. Their father was rarely at home, but when he was, he was angry, violent, and drunk. Their father physically abused their mother, and both parents physically abused the children. Additionally, Allen was repeatedly raped by a cousin from age nine to eleven.

Steve also testified about the family's reluctance to speak of Allen to his counsel or the mitigation specialist:

| | |
|---|---|
| Counsel: | Was it difficult for you to come forward and speak to this jury today? |
| Steve: | Harder than you think. |
| Counsel: | The things that you've told this jury— |

---

[1] Steve Allen will be referred to as "Steve" in this opinion; Guy Allen will be referred to as "Allen."

2

No. 13-70027

Steve:      Something I was never supposed to tell.

Counsel:    Are these things you even discuss inside your family?

Steve:      Never. They never get brought up. They never get mentioned. They never get talked about. They never get hinted about. Something that was supposed to stay hidden.

Counsel:    Were you encouraged not to tell?

Steve:      For—yeah, they told me not to say anything. If [mitigation specialist] [G]erry Byington would come by and send a message on, I was not to talk to him for any reason. Or any one of the lawyers that were representing my brother. I wasn't suppose[d] to talk to them, period.

Counsel:    Well, we're talking about right now, not sometime in the past.

Steve:      I'm talking about just here recently, even last night. I was encouraged not to talk to you—any of you about it.

Counsel:    It's not something even you and Guy have discussed, is it?

Steve:      Never.

During its closing argument, the prosecution stated that "[i]f there is a scintilla of mitigation, it must come from Steve Allen" and "if there's one of you who believes that Steve Allen is a credible and believable person, we failed in voir dire because we did allow an insane person to come on to this jury." The prosecution noted that no one other than Steve had testified on Allen's behalf; that the absence of any other witnesses was "telling"; and that their "silence sp[oke] volumes" because "[i]f they had something good to say, you better believe they would have been brought it in here to say it."

Defense expert Dr. Robert Cantu, a general and forensic psychiatrist, also testified during the penalty phase. His testimony was based on information gleaned from Steve's testimony, a meeting between Steve and trial counsel, and facts in a hypothetical incorporating Allen's life history. He did not personally evaluate Allen or review his records. Cantu testified that Allen's upbringing explained, but did not excuse, much of his behavior. He stated that because Allen's father physically abused women and treated them

as objects, Allen did so as well, and that Allen was angry with women because his own mother was not protective of him. Also, Allen's sexual assault by his cousin made him overly aggressive in an attempt to stave off future attacks. Cantu concluded that Allen's violence and rage could be managed, particularly in a prison setting, with the right type of therapy and medication.

Also presented to the jury during the penalty phase was evidence of Allen's violent history. In 1994, Allen was convicted of aggravated assault after an altercation with a man that resulted in the man's death. That same year, a woman with whom Allen had a child was questioned by police about bruises on her face; she testified that Allen, her boyfriend at the time, had beat her. In 1998, Allen assaulted his then-wife Darlene Allen, told her he was going to kill her, broke her jaw, fractured her rib, and ruptured her spleen. When Darlene's fourteen-year-old daughter tried to intervene, Allen pushed her out a second-story window, resulting in the placement of a rod and two screws in her leg. This resulted in a conviction for misdemeanor assault. While Allen was incarcerated pending trial for the murders of Hill and Johnson, he was involved in two fights with other inmates. Evidence of convictions for drug offenses and criminal trespass was also presented.

Allen was sentenced to death in March 2004. His direct appeal was denied in June 2006, and the United States Supreme Court denied his petition for a writ of certiorari in January 2007. Allen filed for state habeas relief. In one of his ten claims for relief, Allen argued that trial counsels' mitigation investigation and presentation was inadequate. At the evidentiary hearing, trial counsel were asked about their decision not to allow Cantu to personally

evaluate Allen.[2]  Counsel testified that they did not want Cantu to evaluate Allen because, if he had, the State would have been allowed to evaluate Allen. Also, one of Allen's trial counsel testified he felt they would "lose ground" if Cantu met with Allen because Allen was "one of the most explosively dangerous human beings" he had ever known,[3] and the "problem with having an expert interact with your client is that the expert is bound to make truthful answers and you may then create an expert who helps you and damages you at the same time."

On the same claim, trial counsel testified that Steve was the only family member to present mitigation testimony because Allen and his family would not speak to counsel or the mitigation specialist, Gerry Byington.  In fact, trial counsel were surprised when Steve "finally" came forward and agreed to testify.  One of Allen's counsel testified that

> Guy was an absolute stonewall.  Every time that I raised mitigation with Guy, every time I reminded him that in my opinion he was a perfect candidate for death row unless we found the reasons to persuade a jury that he deserved some consideration that he should not have the death penalty inflicted, he just wouldn't talk.  What little we did learn, and it wasn't much, never came as a result of any communication I had with Guy.  It came because Gerry Byington somehow got it.

He also stated that "[t]he single most frustrating part of representing Guy in this death penalty case is that [as to] what in my mind was the single most important issue, mitigation, [he] was an absolute stonewall."

Danalynn Recer, the director of a capital-case defense office, presented a

---

[2] Allen did not bring a claim in the state court challenging trial counsels' utilization of Dr. Cantu.  Counsel were questioned about Dr. Cantu within the context of Allen's mitigation claim.

[3] One of Allen's trial counsel knew him well as he had represented him on his convictions for aggravated and misdemeanor assault.

report to the state court in which she concluded that counsel had performed their mitigation investigation inadequately. She found that most of Allen's family was easily located; all of them cared about Allen and were interested in cooperating with the defense; all of them invited state habeas investigators into their homes to visit; and most were willing to provide sworn affidavits regarding the testimony they would have provided at trial. Recer also reported that Byington developed a list of 19 potential witnesses but only interviewed two, and that he did not interview any life history witnesses until six weeks before the penalty phase when he attempted to speak with Allen's mother and aunt.

Allen submitted affidavits from several family members and friends in support of his state habeas application. The affidavits detailed the extreme poverty in which Allen grew up; a family history of mental illness; the physical abuse of Allen's mother by his father; the death of Allen's brother and aunt; and the physical and sexual abuse of Allen by family members. All affiants stated they would have testified for Allen if asked. One family friend, Charles Wattles, stated that he received a call from Allen's mother asking him to speak to trial counsel; he called counsel two or three times and left messages, but no one ever contacted him.

There was also evidence that one of Recer's interns had stayed on Allen's mother's doorstep for 40 hours to get an interview. Also, Byington's time summary showed he began his attempts to contact family members in March 2003, and included at least ten entries documenting such efforts.

In December 2009, the state court denied habeas relief. The Texas Court of Criminal Appeals adopted the court's findings and denied relief. Allen filed for federal habeas relief in August 2011. The magistrate judge recommended the petition be denied on procedural and substantive grounds. Following the

Supreme Court's decision in *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), the district court referred the case back to the magistrate judge for an amended report. The magistrate judge again recommended denial of relief. In August 2013, the district court conducted a de novo review of Allen's claims, "approved and accepted" the magistrate judge's amended report, denied relief, and denied a COA. Allen filed a notice of appeal and a motion for COA with this court. After briefing was completed, Allen's counsel asked to be removed due to health problems. New federal habeas counsel was appointed and the parties were directed to re-brief the case.

## DISCUSSION

To appeal the district court's denial of his habeas petition, Allen must first obtain a COA. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, "a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The issue is the "debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342. "Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims," but rather "an overview of the claims in the habeas petition and a general assessment of their merits.'" *Id.* at 336. "[A]ny doubts as to whether the COA should issue are resolved in favor of the petitioner." *Moore v. Quarterman*, 534 F.3d 454, 460 (5th Cir. 2008).

For claims that were adjudicated at the state court level, "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Barrientes v. Johnson*, 221 F.3d 741, 772 (5th Cir. 2000). Under Section 2254(d), a federal court may not grant habeas relief unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Higgins v. Cain*, 720 F.3d 255, 260 (5th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "A state court's decision involves an 'unreasonable application of clearly established federal law' if the state court 'identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). "The state court's factual findings are 'presumed to be correct' unless the habeas petitioner rebuts the presumption 'by clear and convincing evidence.'" *Id.* (quoting 28 U.S.C. § 2254(e)(1)).

To prevail on an ineffective assistance of trial counsel claim, Allen must show that (1) counsel's actions were deficient, and (2) the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As to the first prong, there is a "strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance[.]" *Id.* at 689.  To satisfy the second prong, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Allen seeks a COA on his third and fourth claims for habeas relief at the district court.  We examine each in turn.

### I.  *Whether the district court's denial of relief on Claim 3 is debatable*

At the district court, Allen claimed that trial counsel provided ineffective assistance by failing to prepare expert witness Dr. Robert Cantu adequately to testify on behalf of Allen during the punishment phase of trial.  After considering the claim on the merits,[4] the magistrate judge found that counsels' decision not to have Cantu personally evaluate Allen or his records was not deficient, but, instead, strategic, because "Texas law at the time provided that a defendant who submits to an interview by his own psychiatric expert must submit to an interview with the prosecution's expert."  The magistrate judge also discussed the testimony by one of Allen's counsel that he did not want Cantu meeting Allen as he felt they would "lose ground" due to what he knew of Allen.

In addition, the magistrate judge found that Allen "has not shown he was prejudiced as a result of counsel's strategic decision" as "[he] has not pointed to any evidence or testimony Cantu would have presented had Cantu examined him.  Rather, Allen simply suggests Cantu was subject to damning cross-examination by the prosecution as a result."  The magistrate judge noted that while it was true that during cross-examination Cantu admitted he did not

---

[4] This claim was not raised at the state court and is therefore unexhausted; the magistrate judge excused the default under *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).

review Allen's records, "[u]nder Texas law, had Cantu reviewed those records, he would have been required to disclose the information in them." The information in the records showed that Allen: (1) had an "other than honorable discharge" from the Army due to a dirty urinalysis; (2) admitted to marijuana, cocaine, and speed use; (3) had a history of assault; (4) had anger problems which led him to "episodic acting out"; (5) possessed "much in common" with individuals known to be violent; (6) took no responsibility for one child and had not seen two other children in three years; (7) rationalized his own behavior and transferred blame to others; (8) did not "exhibit empathy" toward his victims; and (9) had a history of drug use. The magistrate judge found that "Counsel's strategy was aimed at avoiding the damage that admission of such evidence would have caused." Therefore, "Allen has failed to show counsel's decision to limit the information provided to Cantu and thus avoid the admission of damaging evidence, resulted in prejudice to him."

The district court adopted the magistrate judge's findings in full, holding that Allen had "failed to show that trial counsel's decision to not have Dr. Cantu examine Allen in order to protect Allen from examination by the prosecution's expert constitutes a deficient strategic decision or prejudiced his defense."

In his motion for COA, Allen contends that counsels' argument that they did not have Cantu evaluate Allen because they did not want the State's expert to evaluate him is without merit. He notes that any information the State would have gleaned could not have been used unless trial counsel presented Cantu's testimony at trial.[5] In light of this, Allen argues, trial counsel should

---

[5] Allen adds to his request for a COA on Claim 3 on appeal. He argues, for the first time, that trial counsel were ineffective for not having Allen evaluated by "another forensic medical expert." Because a request for a COA on this specific claim was not raised at the

have allowed the personal evaluation, kept all the gleaned information confidential, and had a non-examining expert testify instead of Cantu. As to prejudice, Allen concedes he cannot establish it because state and federal habeas counsel failed "to obtain and/or present evidence from a mental health evaluation." He argues that under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), he is entitled to remand for the consideration of prejudice in light of a new mental health evaluation he now provides to this court.

As to the first prong of *Strickland*, we conclude that reasonable jurists would not debate the district court's conclusion that trial counsel were not deficient. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Here, trial counsels' strategic decision not to have Cantu personally evaluate Allen was reasonable. Counsel – one of whom knew Allen well – not only wanted to avoid an examination of Allen by the State, but also felt that "no good" could come out of Cantu examining Allen due to his "explosively dangerous" personality. Trial counsels' strategic decision to restrict Cantu's access to Allen's records was also reasonable because, had Cantu reviewed them, the damaging information in the records could have been admissible at trial on cross-examination. *See* TEX. R. EVID. 705(a).

Nevertheless, even assuming that trial counsels' performance was

---

district court, we lack jurisdiction to consider it, and it is waived. *See Brewer v. Quarterman*, 475 F.3d 253, 255 (5th Cir. 2006). "We have repeatedly held that a contention not raised by a habeas petition in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief." *Johnson v. Puckett*, 176 F.3d 809, 814 (5th Cir. 1999).

deficient, the district court's conclusion that Allen did not establish prejudice is not debatable.  The magistrate judge found that Allen failed to establish prejudice as he did not "point[] to any evidence or testimony Cantu would have presented had Cantu examined him."  In one precedent, the defendant argued that his counsel was ineffective because he failed to call an expert witness to testify about blood testing.  *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).  We rejected the claim because the defendant "did not present any evidence or allegations concerning what the expert would have stated . . . ."  *Id.* In another case, we held that to establish prejudice on an ineffective assistance claim based on failure to call a witness, the defendant must "set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."  *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).  Allen argues that counsel should have had Cantu evaluate Allen and his records so that Cantu would have been better prepared to testify during the punishment phase.  But Allen did not provide the district court with any evidence of what Cantu would have testified to had he examined him or his records, nor did he show that Cantu's testimony would have been favorable to the defense.  Reasonable jurists would not debate the conclusion that prejudice was not established.

Allen does not dispute the magistrate judge's prejudice conclusion, but claims that, under *Martinez*, he is entitled to remand to establish prejudice via a newly provided mental health evaluation.  This argument is without merit as Allen has received all the relief he is due under *Martinez*.  *Martinez* "allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted," it "does not entitle the prisoner to habeas relief."  132 S. Ct. at 1320.  Here, the magistrate judge found that Claim 3 was procedurally defaulted.  It excused the default under *Martinez*, considered the

claim on the merits, and recommended denial of relief. The district court conducted a de novo review of Allen's claims, adopted the magistrate judge's findings, and denied relief. Allen is entitled to no further relief under *Martinez*.[6]

Because the district court's denial of relief on Claim 3 is not debatable, Allen's request for a COA is denied.

## II.   *Whether the district court's denial of relief on Claim 4 is debatable*

In his fourth claim for relief at the district court, Allen claimed that trial counsel provided ineffective assistance by failing to conduct a proper investigation into Allen's life history and to present a mitigation defense during the punishment phase of trial. This claim was adjudicated on the merits at the state court. As is relevant here, the state court made the following factual findings and denied relief:

> vv) Based on the credible testimony of trial counsel, this Court finds that Applicant's family, other than Steve, was uncooperative and did not provide counsel with beneficial information regarding Applicant's past.
>
> \*\*\*
>
> yy) Counsel faced an uphill battle on punishment since the family was uncooperative, but were nonetheless successful in procuring the beneficial testimony of Steve Allen.

On federal habeas review, the magistrate judge found that Allen did not "establish[] the state court was unreasonable in concluding counsel did not conduct an inadequate investigation into his background" as he did not "point[]

---

[6] Further, Allen argues that remand is required under *Martinez* and *Trevino* because state and federal habeas counsel were ineffective for not obtaining a mental evaluation of Allen. We disagree. *Martinez* and *Trevino* apply to claims of ineffective assistance of *trial* counsel, and examines if habeas counsel in initial collateral proceedings was ineffective for failing to bring such claims. *See Martinez*, 131 S. Ct. at 1320; *Trevino*, 133 S. Ct. at 1921.

to clear and convincing evidence which contradicts the finding of the state court that the mitigation investigation was largely stymied by the 'stonewall' Allen presented to [counsels'] inquiry into his family history and the lack of cooperation by Allen's family." It noted the following evidence that was before the state court: (1) trial counsels' testimony that Allen's family was extremely uncooperative; (2) Steve's testimony during the penalty phase that the family urged him not to talk to counsel or Byington; (3) the fact that Recer's intern sat on Allen's mom's porch for 40 hours trying to get an interview; and (4) Byington's time summary, which included at least ten entries documenting his efforts to contact Allen's family and showed that Byington began his attempts at contact a year before trial.

In addition to the stonewalling, the magistrate judge found that this was not a case where counsel or the mitigation specialist wholly failed to investigate. Rather, the evidence showed that Byington obtained medical, school, military, and employment records for Allen, and counsel were able to enlist Steve to testify regarding Allen's abusive childhood. As to prejudice, the magistrate judge found it was not established as Allen failed to show that additional family and friends would have testified about evidence other than what was addressed by Steve. Therefore, Allen could not establish that but for the alleged errors of counsel, the outcome of the proceeding would have been different.

Allen argues before this court that trial counsels' performance was deficient as their "*d*[*e*] *minim*[*i*]*s* mitigation investigation and very poor presentation of mitigation evidence through only two witnesses – the unprepared Dr. Cantu and the vulnerable Steve Allen – fell way below acceptable professional standards for the development and presentation of mitigation evidence." He argues that Byington's efforts to contact Allen's

14

family and friends were deficient under controlling federal law.[7]   As to prejudice, Allen argues that the testimony of family and friends was not cumulative and was needed as additional support for Steve's testimony as, due to his criminal past, Steve was impeachable.[8]   Allen argues that had the additional testimony been offered, "[t]here is a reasonable likelihood that one juror might have chosen 'yes' on the mitigation special issue, based upon the horrific childhood from which Mr. Allen emerged."

Allen also contends that remand to the district court for a *"Martinez/Trevino* hearing" is required because the state and federal decisions in this case are "tainted by false testimony."  He relies on a letter sent a year and a half before trial by Allen to his trial counsel, allegedly containing a "load of mitigation evidence and suggesting avenues of investigation."  Allen avers that the letter proves trial counsel lied about Allen's stonewalling, and since the entirety of the decisions by state and federal court were "forged on the false impression" that Allen and his family were uncooperative, Allen has "not yet been afforded a fair hearing for his *Strickland* claims and he deserves one."

Because this claim was adjudicated on the merits by the state court, "[w]e must now decide whether the district court's decision – that the state

---

[7] Allen also argues that the mitigation investigation was unreasonable in light of the ABA guidelines which state that investigation of a defendant's life history must involve "in-person, face-to-face, one-on-one interviews with the client and the client's family, and other witnesses who are familiar with the client's life, history, or family history or who would support a sentence less than death."  The quoted language is from the ABA Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases, Guideline 10.11(c).  These guidelines were promulgated in 2008.  *See Supplementary Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases*, 36 HOFSTRA L. REV. 677, 689 (2008).  As the State notes, the quoted guideline was promulgated well after trial and therefore cannot render the state court's decision unreasonable.  *See Bobby v. Van Hook*, 558 U.S. 4, 7-8 (2009).

[8] On cross-examination, Steve admitted that he had been incarcerated "five or six" times for a total of seven years in prison.

court's resolution of [Allen's] IAC claim was not unreasonable under § 2254(d) – presents a question debatable among reasoned jurists sufficient to warrant a COA." *Ward v. Stephens*, 777 F.3d 250, 263 (5th Cir. 2015), *petition for cert. filed* (May 28, 2015) (No. 14-10033).

As previously noted, under Section 2254(d), a federal court may not grant habeas relief unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "In the habeas context, '[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult'" because "'[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.'" *Ward*, 777 F.3d at 264 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). Ineffective assistance "habeas claims are subject to two layers of deference, and state courts are granted substantial leeway." *Id.* (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Applying this highly deferential standard of review, we find that the district court's decision – that the state court's denial of relief was not unreasonable under Section 2254(d) – is not debatable.

On deficiency, Allen argues that neither trial counsel nor the mitigation specialist did enough to obtain mitigation evidence for presentation in the punishment phase of his trial. Counsels' performance cannot be considered deficient, though, when potential mitigation witnesses refuse to cooperate. "Competence does not require an attorney to browbeat a reluctant witness into

testifying, especially when the facts suggest that no amount of persuasion would have succeeded." *Knowles*, 556 U.S. at 125. The evidence shows that Allen's family was not willing to cooperate with counsel or the mitigation specialist. Steve testified that he was told by family as recently as the night before trial that he should not speak on Allen's behalf. In one instance, an intern working for the defense stayed on Allen's mother's doorstep for 40 hours to get an interview. Such evidence suggests that "no amount of persuasion would have succeeded" in convincing the family to testify. *See id.* Accordingly, counsels' "acceptance of [Allen's family's] conveyance of a refusal [to testify] does not rise to the high bar for deficient performance set by *Strickland*." *Id.* (citation, quotation marks, and alterations omitted).

Further, absent "clear and convincing" evidence to the contrary, we are precluded from "second-guessing" the state court's factual finding that Allen's family stymied the mitigation investigation. *Ward,* 777 F.3d at 268. Though the affidavits provided by Allen state that family and friends would have testified had they been asked, such evidence does not meet the "clear and convincing standard" when viewed in light of the evidence to the contrary.

In addition, this is not a case where counsel wholly failed to investigate. The evidence shows that Byington obtained medical, school, military, and employment records for Allen. In fact, the state court made factual findings that Byington submitted a "Service and Expense Summary Report, reflecting 111 hours of service," and that he worked a "couple of hundred hours over the approved money[.]" Also, though faced with the refusal of Allen's family to speak on his behalf, trial counsel were nonetheless able to procure Steve's testimony. In light of the foregoing, the district court's conclusion that trial counsel were not deficient is not debatable.

Because deficiency is not established, we need not consider prejudice.

17

No. 13-70027

Finally, Allen argues that remand is required on Claim 4 under *Martinez* and *Trevino* "in the interests of justice" because a newly discovered letter proves that Allen did not "stonewall" counsel.  This argument is without legal support because "once a claim is considered and denied on the merits by the state habeas court," as is the case here, "*Martinez* is inapplicable . . . ." *Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014).  In any event, assuming arguendo the letter established that Allen did not "stonewall" counsel, it does nothing to overcome the state court's factual finding that Allen's family stymied the mitigation investigation.[9]

Because the district court's decision – that the state court's denial of relief on Allen's mitigation investigation and presentation claim was not unreasonable – is not debatable, Allen's request for a COA is denied.[10]

DENIED.

---

[9] Allen also contends that he was denied a fair hearing because state habeas counsel failed to secure his attendance.  He provides no legal support for the contention that personal attendance is required; therefore, the argument is waived.  *See* FED. R. APP. P. 28(a)(8)(A).

[10] Subsequent to the completion of briefing, Allen filed a 28(j) letter asserting that a recent unpublished opinion, *Tabler v. Stephens*, 591 F. App'x 281 (5th Cir. 2015), supports his motion for COA. *Tabler* is inapposite.  In *Tabler*, we held that *Martinez* applies where the "ineffective assistance of habeas counsel . . . prevents an initial-review collateral proceeding from ever taking place." *Id.* at 281.  We also noted a potential conflict in *Tabler* because Tabler had the same counsel for both his state and federal habeas proceedings.  *Id.*  Neither circumstance is present here.