[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11318
Non-Argument Calendar
_____

D.C. Docket No. 6:12-cv-01397-GKS-KRS

GILBERT HARRIS, JR.,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 12, 2014)

Before MARCUS, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Gilbert Harris Jr., a Florida prisoner, appeals pro se the denial of his petition

for a writ of habeas corpus.  28 U.S.C. § 2254.  Harris argued that trial counsel was

ineffective for failing to object when the trial court denied the jury's request for a transcript of a witness's testimony because that ruling led the jury to believe that it was impermissible to recite that testimony.  Because it was not an unreasonable application of clearly established federal law for the Florida courts to conclude that Harris failed to establish that his counsel acted deficiently or that he was prejudiced by counsel's conduct, we affirm.

## I. BACKGROUND

Harris proceeded to trial on charges of armed sexual battery and false imprisonment.  Before voir dire, the trial court introduced the court reporter.  The district court explained that the reporter was "making a record of everything that's being said in the courtroom" and could "later, upon request, make a written version of her notes so anybody can read what was said during trial."

At trial, the victim, Harris's wife, Janelle Harris, testified that, while she was separated briefly from Harris, he sexually abused and restrained her.  Janelle testified that, about a year earlier, she was living in her mother's house, but returned to the family home to spend the night.  The next morning, Harris forced his way into the house wielding a knife that they routinely left on the front porch to open the door.  Harris told Janelle repeatedly to hush as he pushed her onto a bed, told her that he was going to rape and kill her, and placed duct tape over her mouth.  When Harris tried to tape Janelle's wrists to the frame of the bed, she

2

resisted and grabbed the knife.  Harris began to strangle Janelle, who managed to bite Harris's arm, and he bit her in return.  The couple tumbled onto the floor, and then Harris raped Janelle.

As he was leaving, Harris warned Janelle not to tell anyone about the incident and not to appear for a court date, and he instructed her to tell her male "friend" that "it was over."  Harris said that he was watching Janelle, she would not be harmed if she followed his instructions, and he would return in a week to "be a family."  After Harris left, Janelle "laid . . . on the floor for a while and cried."

Janelle eventually cleaned her body, got dressed, and drove to the police station, where she reported the incident.  Janelle identified photographs taken of bruises and bite marks on her body, but she explained that some of her injuries had been inflicted a week earlier.  On cross-examination, Janelle stated that she had not been raped and had acquiesced to Harris's request to have sex.

Harris called Janelle's mother, Mary Lovett, as a witness in his defense. Lovett testified that, on the morning of the incident, she visited the Harris home around 8:30 a.m. to obtain some clothes for her grandsons to wear to church; she was surprised to see Harris's car parked in the driveway; and she entered the house to find Janelle sleeping peacefully in her room.  Lovett returned to the house a little before 11:00 a.m. and met Janelle as she was walking out the front door.  Janelle,

3

without explanation, asked her mother to keep the boys. Lovett could not remember if Janelle had been upset, but after Lovett had her memory refreshed with her statement to the police, she recalled that Janelle appeared to have been crying as she left the house. Lovett acknowledged that she did not want anything to happen to Harris.

Harris admitted that he had assaulted Janelle. He testified that he entered their home with his key, woke Janelle, and "coerced her, pretty much, . . . to have sex." Later in the morning, he allowed Lovett to enter the home and retrieve clothes for the boys, and the situation remained peaceful until Janelle received a telephone call and would not identify the caller. A fight ensued and, after Janelle admitted to talking to another man, Harris began to choke Janelle. According to Harris, Janelle retrieved a knife from under her pillow, tried to stab Harris, and then bit him. Harris admitted that he taped Janelle's mouth and one of her arms and then warned her not to call the police before he left the house.

During deliberations, the jury sent a note to the trial court that asked, "Mother and in-law's testimony, can we see, please?" The trial court interpreted the note as requesting either the "transcript of the testimony, which [it was] not going to permit" because "[w]e can't type" it, or the written statement that Lovett provided to the police, which was inadmissible and could not be considered by the jury. The prosecutor and the trial court agreed that the jury should rely on their

4

recollection of the testimony.  Harris agreed with the decision, "assuming that [the trial court did not] want to read back her testimony," and the trial court responded, "No, we're not going to do that."

After the jury returned to the courtroom, the trial court told the jury that the court reporter could not produce a written transcript and that they should rely on their recollection of the testimony:

> If you're asking to have the oral testimony transcribed by the court reporter to be read back in there, the answer would be no because it would be time consuming and not possible to have her type that up that quickly.  So that answers that part of it.
>
> If you're asking to see those handwritten things that were used during the trial, the answer is no, because they're not in evidence. And so that answers your question.
>
> So you will have to rely on your collective memory, if you will, as to the testimony you've hear from the witness stand and the evidence that's back there in the room with you.  I know you may be disappointed, but, again, that's the law.  Thank you very much, though.  Any other questions, we'll be glad to try to answer them.

After the jury resumed its deliberations, the trial court mentioned that it intended to revise its initial instructions to the jury.

> I think they wanted me to — when I said that, they pointed at her.  One of them went like that (indicating) to the court reporter.  So I think I'm going to change my initial instruction.  When I introduce all the people, I make the mistake, I think, of telling them that the court reporter can type it up and read it back to us, if needed, which I never do it.

5

The jury found Harris guilty of the lesser-included offense of sexual battery and false imprisonment, and Harris received a sentence of 12 years for sexual battery and a sentence of five years for false imprisonment. Harris appealed and argued that the trial court lacked jurisdiction because the affidavit supporting his arrest warrant and the charging document was defective. The Fifth District Court of Appeal affirmed summarily. Harris v. State, 15 So. 3d 596 (Fla. Dist. Ct. App. 2009).

Harris filed pro se a motion for post-conviction relief in which he raised two claims of ineffective assistance of counsel. See Fla. R. Crim. P. 3.850. Relevant to this appeal, Harris argued that trial counsel was ineffective for failing to object when the trial court denied the jury's request for a transcript of Lovett's testimony. Harris contended that the response of the trial court to the jury's question and its remark that it "never" provided a transcript to a jury caused it to believe that it was not entitled to have testimony read back. Harris argued that he was prejudiced because a recitation of the testimony might have led the jury to acquit him and because, had the issue been preserved for appellate review, he would have been entitled to a new trial.

A Florida court denied Harris's motion. The state court applied the standard for reviewing claims of ineffective assistance provided in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), and ruled that counsel had not

6

deficiently in failing to object because "the trial judge had broad discretion to deny the read-back during jury deliberations"; the judge's remark about never providing a transcript was not communicated to and could not have misled the jury; and the judge's remarks "[did] not indicate that the read-back [was] being denied because it [was] prohibited." The state court also ruled that Harris could not "establish prejudice where Counsel failed to object to the denial of the read-back in order to preserve it for appellate review" and when Harris "failed to indicate how" reading the "testimony would have assisted the jury in finding him not guilty." The Fifth Circuit affirmed summarily. Harris v. State, 94 So. 3d 607 (Fla. Dist. Ct. App. 2012).

Harris filed a federal petition for a writ of habeas corpus and repeated his claim of ineffective assistance of counsel. The district court denied the writ and "defer[red] to the . . . conclusion [of the state court] that [Harris] could not establish prejudice at trial where counsel failed to object to the denial of the read-back." The district court noted that counsel "may have been deficient for failing to object to the [trial] court's summary denial of the jury's request" because decisions of the Florida courts issued after Harris's trial "expressly prohibited the [trial] court's refusal to consider a read back," but the district court found it "unnecessary . . . to decide whether [those decisions] . . . [could] be retroactively applied to make a determination that counsel performed deficiently."

## II. STANDARD OF REVIEW

We review de novo the denial of a petition for a writ of habeas corpus that alleges ineffective assistance of counsel. Johnson v. Sec'y, DOC, 643 F.3d 907, 929 (11th Cir. 2011). A petitioner is entitled to a writ of habeas corpus only if the state court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court makes an "unreasonable application" of clearly established federal law only if the court " 'identifies the correct governing legal principle from [the] decisions [of the Supreme Court] but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520, 123 S. Ct. 2527, 2534–35 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S. Ct. 1495, 1523 (2000)). To prevail on an argument involving an unreasonable application of federal law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. ___, 131 S. Ct. 770, 786–87 (2011).

## III. DISCUSSION

8

Harris must "[s]urmount[] [a particularly] high bar" to obtain a writ of habeas corpus based on ineffective assistance of counsel. Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485 (2010). Harris must not only prove that his counsel committed an error and that error was "so serious as to deprive [him] of a fair trial," Strickland, 466 U.S. at 687, 104 S. Ct. at 2064, but he also must overcome the "doubly deferential" standard applied to the decisions of counsel in habeas corpus review. Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009). We are required to determine "not whether counsel's actions were reasonable[,]" but instead "whether there [was] any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S. Ct. at 788.

Harris's claim of ineffective assistance fails. Harris argued that counsel was ineffective for failing to object when the trial court denied the jury's request for a transcript and counsel's request to instruct the jury that it could request a read-back. The Florida courts reasonably concluded that Harris's counsel would conclude that an objection would fail "in [the] light of information then available to counsel." Premo v. Moore, 562 U.S. at ____, 131 S. Ct. 733, 741 (2011); see Strickland, 466 U.S. at 689, 104 S. Ct. at 2065 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). At the time of

Harris's trial, trial courts exercised broad discretion in determining whether to read back a witness's testimony to the jury.  See Frasilus v. State, 46 So. 3d 1028, 1029 (Fla. Dist. Ct. App. 2010); see also In re Amends. to the Fla. Rules of Civil Proc., 967 So. 2d 178, 183 (Fla. 2007) (providing standard instructions for trial courts to either grant, defer, or deny a jury's request to have testimony read back).  "In fact, the Florida Supreme Court [had] observed that 'courts [had] found no abuse of discretion even where the trial judge [had], without much consideration, entirely rejected the jury's request for a read back.' "  Frasilus, 46 So. 3d at 1029 (quoting Francis v. State, 808 So. 2d 110, 130 (Fla. 2001)).  Although the Second District Court of Appeals had held years earlier that a failure to advise a jury of the right to have testimony read back to them had been fundamental error, LaMonte v. State, 145 So. 2d 889, 892–93 (Fla. Dist. Ct. App. 1962), that decision had been based on a statute that made a read-back mandatory, and that statute had since been repealed and replaced with a rule that "eliminate[d] the mandatory language" and gave trial courts discretion whether to read back testimony, Frasilus, 46 So. 3d at 1031–32.

Moreover, the Florida courts reasonably concluded that Harris was not prejudiced.  As explained by the state court, Harris "failed to indicate how he was actually prejudiced" by counsel's conduct.  Lovett's testimony was not such powerful evidence in support of Harris's defense that it was unreasonable for the state court to conclude that the jury would not have acquitted Harris even had the

10

testimony had been read back, particularly in the light of Harris's admissions that he "coerced" his wife into having sex with him and he bound her so she would not report the incident to the police. The state court reasonably determined that Harris failed to establish that his counsel was ineffective.

## IV. CONCLUSION

We **AFFIRM** the denial of Harris's petition for a writ of habeas corpus.