NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-2691
_____

CARNELL GIBBS,
                        Appellant

v.

ADMINISTRATOR NEW JERSEY STATE PRISON;
ATTORNEY GENERAL NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-11-cv-01137)
District Judge: Honorable Noel L. Hillman
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 7, 2020

Before: SHWARTZ, SCIRICA, and COWEN, *Circuit Judges*.

(Filed:  May 19, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SCIRICA, *Circuit Judge*

After he shot two people outside a New Jersey bar, Petitioner Carnell Gibbs was convicted of murder, attempted murder, and unlawful possession of a handgun. His attempts at post-conviction relief in New Jersey state court and in federal district court have so far failed. He now appeals the dismissal by the federal district court of his § 2254 habeas petition based on a claim that his original trial counsel was ineffective for failing to ensure an impartial jury. Gibbs alleges that three of the jurors knew him and that his counsel failed to take appropriate action. Because we find that the New Jersey court's denial of this claim was reasonable under existing federal law, we will affirm the federal trial court's denial of Gibbs' habeas petition.

**I.**

In October 1998, outside a bar in Pleasantville, New Jersey, Gibbs challenged John Byrd to a fight. In front of numerous onlookers—as Byrd prepared for a fistfight by taking off his jacket—Gibbs shot Byrd multiple times with a handgun, and then walked over to his body and fired more shots. At that point, one of the onlookers, Alex Crawford, approached Gibbs with his hands up in an attempt to intervene. Gibbs shot him twice, and Crawford died at a nearby hospital. Fortunately, Byrd survived despite eight to ten bullet wounds. Gibbs was indicted and tried by jury.[1] On April 18, 2000, he was convicted of

---

[1] Gibbs was indicted on six counts: (1) first-degree murder, N.J.S.A. 2C:11-3a(1)(2); (2) first-degree attempted murder, N.J.S.A. 2C:5-1, and 2C:11-3a(1)(2); (3) first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and 2C:11-3a(1)(2); (4) second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and 2C:12-b(1); (5) third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b; and (6) second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4a.

all counts against him and sentenced to 70 years' imprisonment.[2]

After his conviction, Gibbs filed a motion for a new trial, contending his counsel had learned—three to four weeks after trial—that three selected jurors had potential connections to Gibbs and were therefore biased against him. In support of the motion, Gibbs included three letters written by his family members that described tenuous connections between Gibbs and three of the jurors that were selected. During a hearing before the state trial court addressing the motion for a new trial, Gibbs' counsel stated that he had no indication of the connections during trial, nor did he recall Gibbs mentioning any relationship with the jurors during jury selection or trial. During voir dire, each of the allegedly biased jurors had not expressed any knowledge of Gibbs and stated they could be impartial. Gibbs' attorney, however, did use fifteen preemptory challenges to strike other jurors. The court denied the motion for a new trial and denied a request for it to interview the jurors—citing the vagueness in the letters and the lack of sufficient evidence of bias.

On June 9, 2003, after exhausting the direct appeals of his conviction, Gibbs filed a Petition for Post-Conviction Relief ("PCR") in New Jersey state court. On May 10, 2007, he filed a supporting brief that included new allegations about the allegedly biased jurors. He now claimed—seven years after his conviction—that he had told his attorney about the jurors during voir dire. Gibbs offered an undated note found in trial counsel's

---

[2] Gibbs was sentenced consecutively to 50 years for first degree murder and 20 years for first degree attempted murder. He was also given a 4-year concurrent sentence for unlawful possession of a weapon, and the remaining convictions were merged for sentencing purposes.

files that read: "I know some of them . . . I don't like . . . He knows my mom[.]" App. 244–245. According to Gibbs, he had given counsel this note during voir dire. Thus, he claimed that he informed his counsel that he knew three prospective jurors and they did not like him, also averring that he had played basketball with one juror and had "other encounters" with another. App. 245–246. But, according to Gibbs, his attorney stated—in reference to the jurors that allegedly knew him—that "this might work in our favor" and could create an issue on appeal if Gibbs was convicted. App. 246. The jurors were seated without objection. Gibbs' PCR was denied by the New Jersey trial court and that denial was affirmed—in a reasoned decision—by the New Jersey Superior Court, Appellate Division.[3]

On February 25, 2011, following the denial of his New Jersey PCR by the Appellate Division, Gibbs filed a habeas petition in federal court under 28 U.S.C. § 2254. On April 30, 2018, his petition was denied by the trial court. Gibbs appealed, and we granted a certificate of appealability on the issue of whether Gibbs' trial counsel was ineffective by failing to seek to interview or exclude the three jurors who were allegedly biased against him.[4]

**II.[5]**

Because the federal trial court did not conduct an evidentiary hearing, our review

---

[3] The New Jersey Supreme Court denied review.

[4] Though Gibbs raised fourteen issues in federal court, only this issue was granted a certificate of appealability.

[5] The trial court had jurisdiction under 28 U.S.C. § 2254, and we have jurisdiction pursuant to 28 U.S.C. §§ 2253 and 1291.

4

of its denial of Gibbs' petition for habeas corpus is plenary. *See Dellavecchia v. Sec'y Pennsylvania Dep't of Corr.*, 819 F.3d 682, 691 (3d Cir. 2016). Gibbs contends that his counsel was ineffective for failing to strike or interview three allegedly biased jurors, thus robbing him of the right to a fair trial guaranteed under the Sixth Amendment of the U.S. Constitution. Our review of Gibbs' claim is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, a petitioner's claim that was "adjudicated on the merits" in state court fails in federal court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." *Simmons v. Beard,* 590 F.3d 223, 231 (3d Cir. 2009) (quoting 28 U.S.C. § 2254(d)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

When assessing an ineffective assistance of counsel claim we apply the *Strickland* standard, which requires that a petitioner show deficient performance and prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The ultimate question is whether counsel's performance fell below "an objective standard of reasonableness." *Id*. at 687–88. It is a deferential standard that becomes "doubly" so when combined with the deferential AEDPA standard. *See Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). Therefore, a state court is given "even more latitude" when we review ineffective assistance of counsel claims under § 2254. *See Knowles*, 556 U.S. at 123.

5

Based on this deferential review, Gibbs' § 2254 petition fails. The New Jersey Appellate Division[6] adjudicated his claim on the merits. It determined that (1) counsel was not deficient for failing to attempt to strike the jurors during voir dire and that (2) Gibbs could not establish prejudice for counsel's failure to move to interview the jurors. The Appellate Division determined that if counsel was unaware of the allegedly biased jurors until after trial, he could not have been ineffective for failing to object during voir dire. Alternatively, it held that if counsel had been told about the jurors by Gibbs during voir dire and stated that having those jurors could be an advantage or create an issue on appeal—as Gibbs alleged seven years after trial—then counsel's decision to not object to the jurors was strategic and not deficient. The Appellate Division went on to find that counsel's failure to file a motion to interview the jurors would not have prejudiced Gibbs because the trial judge would not have granted the motion based on Gibbs' vague allegations of bias, which were undermined by those jurors failing to acknowledge any relationship with Gibbs or prejudice again him during voir dire.

We find that the New Jersey Appellate Division's determination was not an "unreasonable" application of federal law. *See* 28 U.S.C. § 2254(d). Gibbs' counsel could not be ineffective for failing to remove the jurors if he did not know about the allegations of bias until after trial—as his counsel stated was the case during the post-trial hearing. *See United States v. Noel*, 905 F.3d 258, 272 (3d Cir. 2018) ("[W]e would not fault a defendant for failing to inquire further into *voir dire* responses that raised no potentially

---

[6] Under AEDPA, we look to the highest state court to issue a reasoned opinion and examine its reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

material concerns at the time, yet later turned out to be demonstrably and materially false."); *see also Strickland*, 466 U.S. at 689 (holding that we are obligated "to evaluate the conduct from counsel's perspective at the time").

But even if Gibbs' counsel had seen Gibbs' note and been told of the jurors during voir dire; if counsel had concluded that keeping the jurors would benefit his client, his strategic decision could be seen by a "fairminded jurist[]" as reasonable. *See Harrington*, 562 U.S. at 101. None of the jurors acknowledged during voir dire that they knew Gibbs when asked by the trial judge, and each stated that he could act as an impartial juror. As the Appellate Division held, Gibbs' counsel could have reasonably thought that any sort of relationship to Gibbs could make those jurors more sympathetic and made the tactical decision to keep the jurors.[7] The Appellate Division reasonably applied federal law by giving "wide latitude" to Gibbs' counsel who was making a tactical decision. *See Strickland*, 466 U.S. at 689; *cf. Breakiron v. Horn*, 642 F.3d 126, 141–143 (3d Cir. 2011) (finding that a counsel's alleged strategic decision to allow a possibly biased juror to remain was unreasonable when that juror had clearly been exposed to a prejudicial statement and had never stated that he could be impartial).

Regardless, even if Gibbs' counsel could be considered deficient, there was no prejudice here. Gibbs has not presented sufficient evidence to establish that the jurors—

---

[7] We note that the most plausible reading of the record is that Gibbs' counsel was not aware of any potential issues with the jurors until after trial, as he stated to the trial court on the record. Had counsel been aware of any potential issues, the record suggests— based on the fact that he used fifteen preemptory challenges to strike other jurors—that he would have objected contemporaneously.

7

who stated they would be impartial and who were approved by the trial judge—were biased. *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (stating that an appellate court cannot easily "second-guess" the conclusions of a trial court during voir dire). His allegations of juror bias presented seven years after trial are terse and undeveloped, providing few details beyond vague statements of general animus. Those allegations are not enough to establish bias in light of the record.[8]

The Appellate Division's finding of a lack of prejudice for failure to interview the jurors was also a reasonable application of federal law. Gibbs' counsel, though he did not formally request to interview the jurors, essentially made the identical request when he asked the trial judge to question the jurors. Based on the record before him, the trial judge denied that request and Gibbs' motion for a new trial. The Appellate Division reasonably concluded that the trial judge would have also denied a formal request for Gibbs' counsel to interview the jurors because Gibbs' allegations were vague and contradicted the clear record during voir dire when each of the jurors denied knowing Gibbs while stating they could be impartial.

## III.

For the foregoing reasons, we will affirm the denial of habeas relief.

---

[8] Additionally, as laid out in the Appellate Division's opinion, the facts here were clearly enough for an impartial jury to convict Gibbs on all counts. There were multiple eyewitnesses to the shooting and any self-defense claim by Gibbs was contradicted by enough evidence for a jury to "certainly . . . conclude that Byrd was unarmed when shot." App. 108. Plus, Gibbs shot Byrd multiple times while he was helplessly lying on the ground. Finally, Gibbs admitted that he shot Crawford, the innocent bystander, without any reason to believe he was armed or a threat.