[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-10965

_____

GREGORY GAFFNEY,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:19-cv-01400-GKS-LRH

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Gregory Gaffney appeals the district court's denial of his petition for habeas relief under 28 U.S.C. § 2254 following his convictions for lewd and lascivious molestation of K, a minor. We granted a certificate of appealability (COA) on the following issue: whether the state post-conviction court unreasonably found that Gaffney's counsel was not deficient, and Gaffney was not prejudiced, where counsel failed to introduce potentially exculpatory emails from a significant witness at trial.

After careful review and with the benefit of oral argument, we affirm.

## I.

In 2009, Gaffney was arrested and charged with four counts[1] of lewd or lascivious molestation, in violation of Florida Statute § 800.04(5)(b). To convict, Florida had to prove that Gaffney "intentionally touche[d] in a lewd or lascivious manner the breasts, genitals, genital area, or buttocks, or the clothing covering" K or "force[d] or entice[d]" K to touch Gaffney in one of those areas on him. Fla. Stat. § 800.04(5)(a). The state also had to prove that

---

[1] The State also charged Gaffney with lewd or lascivious molestation of K's younger sister. K's sister testified at trial but could not identify who molested her, and the court did not allow the sister's prior interview into evidence. As a result, Gaffney moved for judgment of acquittal on two counts as it related to K's sister, and the State conceded that it had not met its burden on those two counts.

Gaffney was over the age of 18 and K was under the age of 12. *Id.* § 800.04(5)(b).

On January 14, 2011, the case went to trial and the state presented the following witnesses: K, the victim; Amanda Raymond, the victim's mother; M, K's brother and one of Raymond's sons; Officer Curtis Stewart; Detective Christopher Dillon; Linda Pedicone, the advanced nurse practitioner for the Child Protection Team (CPT); and the CPT interviewer, Denise Friedrichs. The following was presented at trial.

In January 2009, Raymond moved to Orange County, Florida with her six children, ages ranging from six to eleven. Her boyfriend and his twenty-one-year-old son lived with them in a three-bedroom house. Raymond's children shared a bedroom, where all children slept in one bed.

In May 2009, Raymond was good friends with Gaffney, and he would often stop by the house. Sometimes, Gaffney would come over at night and Raymond would find him sleeping on the couch the next morning. During that time, Gaffney also was seen sleeping in the large bed in the children's room.

In June 2009, K, who was seven years old, started getting sick. The doctors found that she had kidney problems, and her symptoms grew worse. K also started to have behavioral issues, such as not playing with others, running away and hiding, and being mean. According to Raymond, this was atypical of K as she had always wanted to be around everyone.

On August 10, 2009, K disclosed to her brother M that Gaffney touched her vagina and made K touch his penis by grabbing her hand and placing it on his penis. K also said this was the second time that Gaffney touched her vagina, with the other incident occurring a week before. M told Raymond, who then asked K about both incidents. Raymond examined K, finding K's vagina swollen and red with a discharge, and took her to the doctor. The doctor sent K to the hospital, where the Orange County Police were contacted.

At the hospital, Officer Stewart arrived and spoke with K, who explained that Gaffney had touched her twice. Officer Stewart turned the case over to Detective Dillon, who scheduled an interview with CPT for Raymond and K on August 17. Detective Dillon told Raymond not to tell Gaffney about the investigation, but Raymond ended up telling him. In an email sent on August 16, Raymond said:

> I JUST WANT TO GIVE YOU HEADS UP THAT [K] HAS BEEN TOUCHED IN HER PANTS AND THERE IS AN INVESTIGATION GOING ON. IKNOW [sic] YOU HAVENT BEEN HERE BUT ONE DAY IN THREE WEEKS,BUT [sic] WE HAD TO GIVE THE DETECTIVES YOUR NAME. WHAT I HOPE AND PRAY IS THAT ITS NOT [M].

On August 17 (the morning of the CPT interview), Gaffney came by the house and talked with K and her twin sister. K said that Gaffney told her that he did not touch her and that he promised to buy her clothes if K said it was not him. At the CPT

interview the same day, K did not want to identify who had touched her or talk about the allegations, but she said that she was certain that none of her brothers touched her. Later, at trial, a video of the entire CPT interview was played for the jury, and K testified at trial that she did not incriminate Gaffney during the CPT interview—even though she knew it was Gaffney—because she "was scared." Also, on the day of the CPT interview, Nurse Practitioner Pedicone examined K's vagina but found nothing particularly abnormal other than general redness.

On August 18, Detective Dillon contacted Gaffney to set up an interview. The same day, Raymond emailed Gaffney saying:

> EVEN THOUGH THE BABY GIRL SAID YOU DIDNT TOUCH HER AND SHE DIDNT KNOW WHO IT IS, YOU SHOULDN'T HAVE EVER MENTIONED I TALKED TO YOU. DETECTIVE DILLAN WOULD REALLY FREAK IF HE KNEW THAT THE TWINS [K and her sister] STAY CLINGED TO YOU THE WHLOE TIME YOUR AROUND. THEY REALLY LOVE YOU GREG, AND YOU CAN TELL THAT THEY TRUST YOU COMPLETELY AND ADORE YOU, BUT DONT THINK FOR A MINUTE I WOULDNT LIE ON YOU TO KEEP MY CHILDEN. ALWAYS KEEP THAT IN MIND.

Finally, on August 31, Detective Dillon interviewed Gaffney who denied touching K but did say that he talked to K the day of the interview. During the interview, Gaffney acknowledged telling

K that he would buy her clothes but that he did not touch her. Gaffney was arrested that day.

At trial, Gaffney was represented by Mark Van Haasteren, who cross-examined the State's witnesses but presented no witnesses for the defense, nor did he ask Raymond about the two emails. The jury found Gaffney guilty of the two counts of lewd or lascivious molestation as to K. The court sentenced Gaffney to two concurrent mandatory life terms.[2]

Gaffney appealed to Florida's Fifth District Court of Appeal, but later voluntarily dismissed his appeal. Gaffney filed for post-conviction relief, bringing nine claims of ineffective assistance of counsel. Relevant to this appeal, Gaffney argued that his counsel was ineffective for failing to impeach Raymond with the two emails she allegedly sent to Gaffney. Gaffney argued that the emails could have been used to establish Raymond's bias and motivation to lie.

The Florida post-conviction state court denied relief, giving three reasons why Gaffney was not entitled to relief: (1) the emails did not constitute impeachment evidence as they did not contain inconsistent statements; (2) the emails did not contain a threat to lie to law enforcement; and (3) the emails were inadmissible because Raymond could deny sending them, precluding

---

[2] Gaffney was designated as a Prison Releasee Reoffender under Florida Statute § 775.082(9)(a)1. Since Gaffney's conviction was punishable by life, he had to be sentenced to a term of imprisonment for life.

21-10965              Opinion of the Court                    7

authentication.    Gaffney appealed, and Florida's Fifth District Court of Appeal affirmed without any reasoning.

Gaffney, proceeding pro se, filed a 28 U.S.C. § 2254 petition. The district court denied the petition and denied Gaffney's motion for a COA. Gaffney appealed, and this court granted a COA on whether counsel was ineffective for failing to introduce potentially exculpatory emails.

## II.

In an appeal from a denial of a § 2254 petition, we review a district court's decision de novo. *Tharpe v. Warden*, 834 F.3d 1323, 1336–37 (11th Cir. 2016). A district court's findings of fact are reviewed for clear error. *Id.* at 1337.

"Although we review the district court's denial de novo, we review the underlying state-court decision under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1363 (11th Cir. 2021). "Under AEDPA, a court cannot grant relief unless the state court's decision on the merits was 'contrary to, or involved an unreasonable application of,' Supreme Court precedent, or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* (quoting 28 U.S.C. § 2254(d)(1)–(2)).

## III.

When the final state court decision does not include a reason for the denial of habeas relief, we "look through" the final decision

to the last related state court decision that provides a rationale and presume that the unexplained decision adopted the same reasoning. *Wilson v. Sellers*, 584 U.S. 122, 125, 128 (2018). Here, Florida's Fifth District Court of Appeal affirmed the denial of Gaffney's state habeas petition without any reasoning, so we look to the state court's post-conviction decision.

Gaffney argues that the state court's post-conviction application of federal law was unreasonable under § 2254(d)(1). A state court's decision is reasonable "so long as fairminded jurists could disagree on the correctness of the . . . decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotations omitted). "In order for a state court's decision to be an unreasonable application of [federal] law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (internal quotations omitted). "If this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 101.

But we need not decide whether the state court's post-conviction application of federal law was unreasonable under § 2254(d)(1) because, even if Gaffney's ineffective assistance claim was "eligible for *de novo* review, it would still fail." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). "The Supreme Court has made clear that we are entitled to affirm the denial of habeas relief in this manner: 'a habeas petitioner will not be entitled to a writ of habeas

corpus if his or her claim is rejected on *de novo* review.'" *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1291 (11th Cir. 2012) (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010)). "[W]e have employed this approach even when it was clear that the deference afforded by section 2254(d) applied." *Id.*; *see, e.g.*, *Sealey v. Warden, Ga. Diagnostic Prison*, 954 F.3d 1338, 1363–64 (11th Cir. 2020); *Ponticelli v. Sec'y, Fla. Dep't of Corr.*, 690 F.3d 1271, 1300 (11th Cir. 2012); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 753 (11th Cir. 2010).

Gaffney argues that his trial counsel was ineffective for failing to impeach Raymond with the two emails she purportedly sent to Gaffney during the investigation; thus, he was prejudiced.

To succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, the petitioner bears the burden of showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To prove prejudice, the petitioner must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome" of trial. *Id.*

Operating under a de novo review, we assume without deciding that Gaffney could show his trial counsel's performance was deficient for failing to cross-examine and subsequently impeach

Raymond with the two emails.  But we conclude that Gaffney has not shown that he was prejudiced as a result of his counsel's presumed deficient performance due to the weight of the evidence presented against him at trial.  Even in taking away Raymond's testimony, the State presented the jury with ample evidence to convict Gaffney.

At trial, K testified that Gaffney came to their house at all times of the day and night and often came into her room at night while she was sleeping.  K also testified that Gaffney touched her vagina twice, describing each molestation in detail.  K testified that she knew that Gaffney was the person who molested her because she saw his face.  K also testified that on the morning of her CPT interview, Gaffney came to her house and told her that he did not molest her.  The State also confirmed this conversation occurred with Gaffney's admission during his interview with Detective Dillon.  In the same conversation with Detective Dillon, Gaffney also admitted to staying overnight at the house.  K testified that she did not tell her CPT interviewer that Gaffney molested her because she was scared to tell the truth.  Officer Stewart also testified that K identified only Gaffney as the person who inappropriately touched her when he spoke with her at the hospital before the CPT interview.

Based on the weight of the evidence against Gaffney, there is no reasonable probability that the outcome of the trial would have been different had his attorney impeached Raymond with the emails.  *See Strickland*, 466 U.S. at 694.  Thus, because Gaffney has

failed to show that he was prejudiced by his counsel's failure to impeach Raymond with two emails, we affirm the district court's denial of his § 2254 petition.

**AFFIRMED.**