Filed 2/9/22  P. v. Westfall CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LOGAN ALLEN WESTFALL,<br><br>Defendant and Appellant. | C093433<br><br>(Super. Ct. No. 18CR001330) |

Appointed counsel for defendant Logan Allen Westfall filed an opening brief that sets forth the facts of the case and asks this court to review the record and determine whether there are any arguable issues on appeal.  (*People v. Wende* (1979) 25 Cal.3d 436.)  After examining the record and considering defendant's contentions in his supplemental brief, we find no arguable error that would result in a disposition more favorable to defendant and affirm.

1

On May 10, 2018, defendant, who was 22 years old, moved in with his father, stepmother, and seven-year-old stepsister. Over the next several days, defendant went into his stepsister's room at night, woke her up while everyone else slept, and sexually assaulted her multiple times. On May 15, 2018, defendant's stepsister told her mother. His stepsister reported that defendant inserted his fingers into her vagina and rectum, forced her to orally copulate him, and inserted his penis in her vagina and rectum.

A pediatric sexual assault examination identified a low level of possible male DNA found in the sperm fraction of the victim's inner thigh swab. During a subsequent police interview, defendant conceded that the biological fluid collected from his stepsister's inner thigh would match him.

Defendant said that on the first occasion, his stepsister touched his penis, but he did not touch her vagina. During the second incident, defendant admitted he put his penis in his stepsister's mouth but did not ejaculate. He also admitted touching her vagina but denied inserting his finger. On a third occasion, defendant said he rubbed his penis on his stepsister's vaginal and rectal areas. While doing so, his penis may have " 'slipped' inside a little bit." Defendant admitted ejaculating on her genitalia during this incident.

Defendant was charged with sexual intercourse or sodomy with a child who is 10 years of age or younger (Pen. Code, § 288.7, subd. (a), count I),[2] three counts of oral copulation or sexual penetration with a child who is 10 years of age or younger (§ 288.7, subd. (b), counts II-IV), two counts of forcible lewd or lascivious acts on a child who is under the age of 14 years (§ 288, subd. (b)(1), counts V-VI), and two counts of lewd or

---

[1] Because defendant pleaded guilty before trial, the facts are based on the probation report, which describes Red Bluff Police Department report No. 18-1474, which defendant stipulated to as the factual basis for his plea.

[2] Further undesignated statutory references are to the Penal Code.

lascivious acts on a child who is under the age of 14 years (§ 288, subd. (a), counts VII-VIII). The court appointed him counsel and he pleaded not guilty to the charges. Defendant waived a preliminary hearing and was held to answer.

At a pretrial hearing on November 9, 2018, defendant requested a *Marsden*[3] hearing. The court cleared the courtroom and heard from defendant and defense counsel. Defendant complained about not receiving discovery until a couple weeks prior to the hearing, not knowing this was the final pretrial conference, that defense counsel had supposedly discussed a mental evaluation with him but the judge denied it, and that defense counsel had discussed his case with three doctors without his permission. Counsel responded that when he first met with defendant in May 2018, defendant said he did not want to have a copy of the discovery, that he had visited defendant multiple times in jail to discuss the progress of the case and what to expect procedurally, and that defendant had asked him to declare him incompetent, but in speaking with defendant, counsel did not believe he was incompetent to stand trial. In fact, counsel believed defendant was "very competent and . . . under[stood] the nature of the proceedings." Defense counsel also informed the court that he had considered the possibility of pretrial diversion under section 1001.36, and had met with three doctors to assess the possibility, but each expert believed defendant did not qualify because of a likely diagnosis of pedophilia. After considering defendant's concerns and counsel's responses, the court denied the *Marsden* motion, finding defense counsel was appropriately communicating with defendant and consulting with experts in preparing defendant's case for trial.

Upon reopening the courtroom, the court asked defendant if he wanted more time to consider the prosecutor's offer of 50 years to life given that his maximum exposure was 36 years determinate plus 70 years to life. The court trailed the matter to allow

---

[3] *People v. Marsden* (1970) 2 Cal.3d 118.

defendant to confer with his counsel.  When the case was recalled, defendant pleaded guilty to counts II, III, IV, and V, and agreed to waive his section 654 and appellate rights.  The remaining counts were dismissed.  The parties stipulated that the probation report and police report (Red Bluff Police Department report No. 18-1474) could serve as the factual basis of the plea.  At the plea colloquy, the court asked defendant whether he had read and understood the plea form; whether he had initialed, dated, and signed the form; whether he had had sufficient time to talk to his attorney about the plea; and whether he understood that by pleading guilty he was giving up the right to trial by jury, the right to see, hear, and question witnesses, the right to present evidence in his own defense, and the privilege against self-incrimination.  Defendant responded "yes" to all of the court's inquiries.

On January 3, 2019, the court sentenced defendant to consecutive terms of 15 years to life each for counts II, III, and IV, plus a consecutive five years for count V.  He was awarded 233 actual days of credit plus 34 days of conduct credit for a total of 267 days of credit.  The court imposed a $160 court security assessment (§ 1465.8), a $120 court facilities assessment (Gov. Code, § 70373), a $1,080 sex offender fine and applicable assessments (§ 290.3), a $10,000 restitution fine (§ 1202.4), and a $10,000 parole revocation restitution fine (§ 1202.45), which was suspended unless parole was revoked.

Defendant appealed without a certificate of probable cause, and this court deemed the appeal timely under the constructive filing doctrine.  Defendant later filed a corrected notice of appeal with a certificate of probable cause, which this court construed as a timely notice of appeal for all appellate purposes.

## DISCUSSION

We appointed counsel to represent defendant on appeal.  Counsel filed an opening brief setting forth the facts of the case and requesting that this court review the record to determine whether there are any arguable issues on appeal.  (*People v. Wende, supra*,

4

25 Cal.3d 436.) Defendant was advised of his right to file a supplemental brief within 30 days of the date of filing of the opening brief.

Defendant filed a supplemental brief raising several arguments. He first contends the court violated his due process rights by not suspending proceedings and evaluating whether he was competent to stand trial under section 1369, subdivision (a)(3).[4] He argues that his autism was a developmental disability that rendered him incompetent, and he claims he informed the court about his autism during the *Marsden* hearing and asked to be evaluated. In his view, his autism should have prompted the court to question his competency during the hearing and to ask whether he understood the trial process.

The record belies his argument. At no time during the *Marsden* hearing did defendant inform the court that he believed he was incompetent to stand trial because he was autistic. Instead, defendant complained about when he received discovery, about not knowing that the pretrial hearing was the last before trial, that defense counsel had spoken to him about a mental evaluation, and that counsel had spoken with three doctors about his case without his permission.

During the *Marsden* hearing, defense counsel specifically addressed the incompetency issue, noting that defendant had asked him to declare him incompetent, but that counsel did not agree he was incompetent. According to defense counsel, defendant sufficiently understood the nature of the proceedings. After listening to defendant and counsel, the court implicitly agreed and denied the *Marsden* motion, finding defense counsel's representation adequate.

---

[4] Section 1369 sets forth the procedure for an incompetency trial.

Defendant incorrectly relies on section 1369, subdivision (a)(3)[5] when arguing the court was required to appoint the director of the regional center to examine him to determine whether he had a developmental disability that rendered him incompetent for trial.  Section 1369, which delineates how a mental competency trial shall proceed, is triggered when counsel informs the court that he or she believes a defendant is or may be mentally incompetent, or if the court believes so, and orders a hearing.  (§ 1368, subd. (b) ["If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369.  If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing.  Any hearing shall be held in the superior court."].)

In this case, based on counsel's many interactions with defendant throughout the course of the criminal proceedings, counsel believed defendant was "very competent" and "under[stood] the nature of the proceedings."  The court apparently did not disagree as it did not order a mental competency hearing when the issue was brought to its attention during the *Marsden* hearing.

To the extent defendant argues that defense counsel should have had defendant evaluated for incompetency even though counsel did not believe he was incompetent because nothing defendant said during a competency evaluation could be used against him during trial if he was found to be competent (Cal. Rules of Court, rule 4.130(d)(3)), we are not persuaded.  An attorney is not required to take any action simply because there

---

[5]  Section 1369 provides in relevant part:  "Except as stated in subdivision (g), a trial by court or jury of the question of mental competence shall proceed in the following order: [¶] . . . [¶]  [(a)](3)  If it is suspected the defendant has a developmental disability, the court shall appoint the director of the regional center . . . to examine the defendant to determine whether he or she has a developmental disability."

is "nothing to lose." (*Knowles v. Mirzayance* (2009) 556 U.S. 111, 121-123 [counsel was not ineffective for abandoning not guilty by reasons of insanity defense because there was "nothing to lose by pursuing it"; "nothing to lose" is not proper standard of review for ineffective assistance of counsel claims].)

Defendant next contends that during the sentencing hearing, he informed the court he was taking Prozac and Zyprexa for anxiety and depression, which should have also prompted the court to order a competency evaluation. The record again fails to support defendant's contention. At no time during the hearing did defendant disclose to the court any medications he might have been taking. In any event, defendant's argument that taking medication to help alleviate the symptoms of anxiety and depression somehow rendered him incompetent to stand trial is speculative. As defendant concedes, the medication actually helped with a chemical imbalance.

Defendant also argues that he initially signed the plea form in the designated spot for his attorney's signature, and that someone crossed out his signature and then signed his name for him in the correct spot because the signatures, according to him and his cellmate who helped him prepare his supplemental brief, do not appear to match. But defendant does not deny that he signed and executed the plea form. The court, moreover, expressly asked defendant if he had signed, initialed, and executed the plea form, and defendant confirmed that he had. Defendant also confirmed that he understood the form and that he did not need additional time to speak with his attorney about the plea.

Defendant contends his appellate counsel was ineffective for failing to raise an ineffective assistance of counsel claim based on his trial counsel's failure to raise a competency issue given his autism and his medication. He requests that we dismiss his appellate counsel and appoint new counsel. We have previously rejected defendant's request to dismiss his appellate counsel, and nothing in defendant's supplemental brief convinces us that appellate counsel should be dismissed and replaced.

7

Defendant finally argues his trial counsel was ineffective because he allegedly did not research the side effects of defendant's medication. To establish ineffective assistance of counsel, defendant must show, by a preponderance of the evidence, that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the result would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) A " 'reasonable probability' " is a probability sufficient to undermine confidence in the outcome. (*People v. Bolin* (1998) 18 Cal.4th 297, 333.) Where " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) "A claim of ineffective assistance in such a case is more appropriately decided in a habeas corpus proceeding." (*Id.* at pp. 266-267)

At the outset, we note there is nothing in the record to support defendant's statement that counsel did not research the effects of his medication. In any event, based on counsel's statements during the *Marsden* hearing, trial counsel believed defendant was "very competent" and had no difficulty understanding the nature of the criminal proceedings. Given that defendant was able to communicate with counsel and understand the proceedings, counsel reasonably could have determined that researching defendant's medication was unnecessary.

Having rejected defendant's arguments and after examining the record, we find no arguable error that would result in a disposition more favorable to defendant.

# DISPOSITION

The judgment is affirmed.

/s/
HOCH, J.

We concur:

/s/
BLEASE, Acting P. J.

/s/
HULL, J.